E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
RYAN C. CHAPMAN (Cal. Bar No. 318595)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-2471
     Facsimile: (213) 894-7819
     E-mail: Ryan.Chapman@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANGELA OH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DIGNITY COMMUNITY CARE, et al., <br><br> Defendants. | No. 2:23-cv-07054 GW (AGRx) <br><br> **THE UNITED STATES OF AMERICA'S NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **[PROPOSED] ORDER** <br><br> Hearing Date:   October 26, 2023 <br> Hearing Time:   8:30 a.m. <br> Ctrm:          9D <br><br> Honorable George H. Wu <br> United States District Judge |

# **TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                                                 <u>PAGE</u>

NOTICE OF MOTION AND MOTION TO REMAND ................................................. vi

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.      INTRODUCTION ......................................................................................... 1

II.     STATUTORY AND REGULATORY FRAMEWORK ......................... 3

III.    FACTUAL AND PROCEDURAL BACKGROUND ........................... 5

IV.     LEGAL STANDARD ................................................................................. 6

V.      ARGUMENT ................................................................................................ 6

        A.      Remand is required because the Eisner Defendants' removal under 42
                U.S.C. § 233(*l*) is defective. ....................................................... 6

        B.      Remand is required because the Eisner Defendants' alternative
                removal under 28 U.S.C. § 1442(a)(1) is defective. ................... 9

                1.      The Eisner Defendants are not federal officers under § 1442. ........ 11

                2.      The Eisner Defendants were not acting under the direction of a
                        federal officer under § 1442. ............................................... 11

        C.      The Eisner Defendants cannot invoke 28 U.S.C. § 2679(d) as a basis
                for removal. ................................................................................... 16

VI.     CONCLUSION ............................................................................................ 16

i

1

# **TABLE OF AUTHORITIES**

2

<u>DESCRIPTION</u>                                                                                  <u>PAGE</u>

3

Federal Cases

4

*Abrego Abrego v. The Dow Chem. Co.*,

5

   443 F.3d 676 (9th Cir. 2006) ........................................................................6

6

*Agyin v. Razmzan*,

7

   986 F.3d 168 (2d Cir. 2021).........................................................................15

8

*Allen v. Christenberry*,

9

   327 F.3d 1290 (11th Cir. 2003) ..............................................................7, 8

10

*Babbitt v. Dignity Health*,

11

   2018 WL 6040472 (C.D. Cal. Nov. 19, 2018) ........................................2, 7

12

*Barnes v. Sea Mar Cmty. Health Ctrs.*,

13

   2022 WL 1541927 (W.D. Wash. Apr. 27, 2022) .......................................8

14

*Buljic v. Tyson Foods, Inc.*,

15

   22 F.4th 730 (8th Cir. 2021) .....................................................................14

16

*Campbell v. S. Jersey Med. Ctr.*,

17

   732 F. App'x 113 (3d Cir. 2018)................................................................9

18

*City & County. of Honolulu v. Sunoco LP*,

19

   39 F.4th 1101 (9th Cir. 2022) ..............................................................6, 12

20

*City of Hoboken v. Chevron Corp.*,

21

   45 F.4th 699 (3d. Cir. 2022) ......................................................................6

22

*County of San Mateo*,

23

   32 F.4th at 756..................................................................................11, 12, 14

24

*Doe v. Centerville Clinics Inc.*,

25

   No. 2:23-CV-1107-NR, 2023 WL 5984337 (W.D. Pa. Sept. 14, 2023) ....................10

26

*Durham v. Lockheed Martin Corp.*,

27

   445 F.3d 1247 (9th Cir. 2006) ...................................................................6

28

*Est. of Booker v. Greater Phila. Health Action, Inc.*,
  10 F. Supp. 3d 656 (E.D. Pa. 2014) ................................................................. 8

*Fidelitad, Inc. v. Insitu, Inc.*,
  904 F.3d 1095 (9th Cir. 2018) ...................................................................... 12

*Gaus v. Miles, Inc.*,
  980 F.2d 564 (9th Cir. 1992) ......................................................................... 6

*Gozlon-Peretz v. United States*,
  498 U.S. 395 (1991) ...................................................................................... 10

*Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*,
  761 F.3d 1027 (9th Cir. 2014) ....................................................................... 6

*Hui v. Castaneda*,
  559 U.S. 799 (2010) ...................................................................................... 16

*International Primate Prot. League v. Administrators of Tulane Educ. Fund*,
  500 U.S. 72 (1991) ........................................................................................ 11

*K.C. v. Cal. Hos. Med. Ctr.*,
  2018 WL 5906057 (C.D. Cal. Nov. 13, 2018) ........................................ passim

*L.D.Q. v. California Hosp. Med. Ctr., [L.D.Q. I]*
  2018 WL 1136568 (C.D. Cal. Mar 1, 2018) ............................................... 2, 7

*L.D.Q. v. California Hosp. Med. Ctr., [L.D.Q. II]*
  2018 WL 6040474 (C.D. Cal. Nov. 16, 2018) ........................................... 2, 15

*Lehman v. Nakshian*,
  453 U.S. 156 (1981) ........................................................................................ 3

*Mesa v. California*,
  489 U.S. 121 (1989) ...................................................................................... 15

*Morton v. Mancari*,
  417 U.S. 535 (1974) ...................................................................................... 10

*N.G. v. Downey Reg'l Med. Ctr.*,
  140 F. Supp. 3d 1036 (C.D. Cal. 2015) ....................................................... 13

iii

*Nye v. Hilo Med. Ctr.*,
  No. 09-220, 2010 WL 931926 (D. Haw. Mar. 11, 2010) ............................................ 10

*O'Brien v. United States*,
  56 F.4th 139 (1st Cir. 2022) ....................................................................................... 16

*O'Guinn v. Lovelock Corr. Ctr.*,
  502 F.3d 1056 (9th Cir. 2007) .................................................................................... 10

*Pediatric & Family Med. Found. v. HHS*,
  2017 WL 8220596 (C.D. Cal. July 6, 2017) .................................................................. 4

*Shamrock Oil & Gas Corp. v. Sheets*,
  313 U.S. 100 (1941) ....................................................................................................... 6

*Sherman v. Dignity Health*,
  2019 WL 2242071 (C.D. Cal. May 23, 2019) ................................................... 2, 12, 15

*Sherman by & through Sherman v. Sinha*,
  843 F. App'x 870 (9th Cir. 2021) ........................................................................ 2, 8, 9

*Sturgeon v. Frost*,
  139 S.Ct. 1066 (2019) ................................................................................................. 11

*Thomas v. Phoebe Putney Health Sys., Inc.*,
  972 F.3d 1195 (11th Cir. 2020) .................................................................................. 16

*United States v. Menasche*,
  348 U.S. 528 (1955) ..................................................................................................... 10

*United States v. Nordic Vill., Inc.*,
  503 U.S. 30 (1992) ......................................................................................................... 3

*United States v. Orleans*,
  425 U.S. 807 (1976) ..................................................................................................... 12

*United States v. Testan*,
  424 U.S. 392 (1976) ....................................................................................................... 3

*Watson v. Philip Morris Cos.*,
  551 U.S. 142 (2007) .......................................................................................... 12, 13, 14

Federal Statutes

28 U.S.C. §§ 1346, 2671, *et seq.* ................................................................3

28 U.S.C. § 1442(a)(1) ................................................................i, 6, 9, 11

28 U.S.C. § 1447 ................................................................................v

28 U.S.C. § 2679(d) ................................................................i, 16

28 U.S.C. § 2679(d)(2) ................................................................16

42 U.S.C. § 233 ................................................................3, 10

42 U.S.C. § 233(a) ................................................................3

42 U.S.C. § 233(b) ................................................................4

42 U.S.C. § 233(c) ................................................................4

42 U.S.C. § 233(g) ................................................................1

42 U.S.C. § 233(g)(1)(A) ................................................................3

42 U.S.C. § 233(l) ................................................................i, 6

42 U.S.C. § 233(l)(1) ................................................................6

42 U.S.C. § 254b ................................................................3, 13

42 U.S.C. § 254b(a)(1) ................................................................13

Pub. L. No. 102-501 (1992) ................................................................14

Federal Regulations

28 C.F.R. § 15.4(b) ................................................................4

## <u>NOTICE OF MOTION AND MOTION TO REMAND</u>

PLEASE TAKE NOTICE that, on October 26, 2023  at 8:30 a.m., or as soon thereafter as they may be heard, the United States of America will, and hereby does, move this Court for an order remanding this case to California Superior Court pursuant to 28 U.S.C. § 1447(c).  This motion will be made in the First Street Federal Courthouse before the Honorable George H. Wu, United States District Judge, located at 350 W. 1st Street, Los Angeles, CA 90012.

The United States brings the motion on the ground that there was no valid statutory basis for removal from California Superior Court.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which occurred on September 18 and 19, 2023.

Dated: September 25, 2023              Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section


    */s/Ryan C. Chapman*
RYAN C. CHAPMAN
Assistant United States Attorney

Attorneys for United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233(g)–(n), establishes a statutory framework for the federal government to assist grant-recipient community health centers with the cost of medical malpractice insurance as they carry out their business of providing health care services to underserved communities.  Despite the complex statutory text, the framework is fairly straightforward: A federally-funded community health center applies to the Department of Health and Human Services ("HHS") to be "deemed" an employee of the Public Health Service ("PHS") for the limited purpose of § 233.  If that health center or its covered employee is sued, the Attorney General determines whether the allegations at issue in the lawsuit fall within the scope of HHS's deeming.  If the Attorney General determines that the allegations are covered, the United States will intervene—as though the health center were a federal employee of the PHS—and, if the lawsuit was filed in state court, remove the action to federal court.  If the Attorney General determines the allegations are not covered, by contrast, the United States does not intervene.

Plaintiffs Angela Oh and W.H. filed this medical malpractice lawsuit against Dignity Community Care, Eisner Health, Mary Claassen, C.N.M., Lillian Morris, M.D., Christina Hillson, M.D.; Catherine Jacobs, C.N.M., Nathana Lurvey, M.D., and Eva Garcia, C.N.M.  Claassen, Morris, Jacobs, Lurvey, and Garcia are employees of Eisner Health (collectively "the Eisner Defendants").  Consistent with the requirements of FSHCAA, the U.S. Attorney, acting as the Attorney General's designee, appeared in the state court action within fifteen days of being notified of the lawsuit and notified the state court that whether the Eisner Defendants were deemed to be PHS employees for the purposes of this lawsuit was under consideration.  While that process should have been allowed to be completed, the Eisner Defendants then unliterally removed this action to federal court.  The Attorney General's consideration process remains ongoing.

This case must be remanded to state court because the Eisner Defendants'

1

1    attempted removal is improper.  Section 233(*l*) only allows a defendant to unilaterally

2    remove a state court action if the Attorney General *failed to appear* in the state court

3    action—it does not allow for removal if the Attorney General has appeared.  Nor does

4    § 1442 apply.  Congress has established a specific statutory scheme through § 233 for

5    deemed PHS employees to access a federal forum and the Eisner Defendants cannot

6    nullify that scheme simply by invoking § 1442.  In any event, § 1442 only applies to

7    officers of the United States or private individuals acting under officers.  Eisner and its

8    employees are not federal officers nor are they "acting under" a federal officer simply by

9    virtue of receiving a federal grant.

10        Courts in this District have repeatedly rejected Eisner's contrary arguments,

11    including from the same defense counsel, in many prior removal cases.  *See Sherman v.*

12    *Dignity Health*, 2019 WL 2242071 (C.D. Cal. May 23, 2019) (no removal under § 233

13    where Attorney General appeared; no removal under § 1442 because doctor was not an

14    officer), *aff'd in part, dismissed in part*, *Sherman by & through Sherman v. Sinha*, 843 F.

15    App'x 870, 873 (9th Cir. 2021); *Babbitt v. Dignity Health*, 2018 WL 6040472 (C.D. Cal.

16    Nov. 19, 2018) (no removal under § 233 where Attorney General appeared; no removal

17    under § 1442 because removal untimely), *aff'd* 2023 WL 1281668 (9th Cir. Jan. 31,

18    2023); *L.D.Q. v. California Hosp. Med. Ctr.*, 2018 WL 6040474 (C.D. Cal. Nov. 16,

19    2018) [hereinafter *L.D.Q. II*] (no removal under § 1442 because removal was untimely

20    and defendants were not federal officers); *K.C. v. Cal. Hos. Med. Ctr.*, 2018 WL

21    5906057 (C.D. Cal. Nov. 13, 2018) (no removal under § 233 where Attorney General

22    appeared; no removal under § 1442 because doctor was not an officer and removal was

23    untimely); *L.D.Q. v. California Hosp. Med. Ctr.*, 2018 WL 1136568, at *1–3 (C.D. Cal.

24    Mar. 1, 2018) [hereinafter *L.D.Q. I*] (no removal under § 233 where Attorney General

25    appeared).

26        Given the clear statutory infirmities, as well as the overwhelming weight of

27    precedent in this District, the Court should remand this case back to the Superior Court.

28

## II.   STATUTORY AND REGULATORY FRAMEWORK

The United States, as a sovereign entity, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define the Court's jurisdiction to entertain the suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)).  The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, *et seq.,* represents a limited waiver of federal sovereign immunity, under which, subject to certain exceptions, the United States may be held liable for the tortious conduct of its employees to the same extent as a private party.  *See United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992).

The federal government provides grants to certain public and non-profit entities to subsidize primary health care services for medically underserved populations under several federally funded programs, one of which is the Community Health Center program.  42 U.S.C. § 254b.  As an optional benefit, FSHCAA makes § 254b grant recipients, their employees, officers, and certain individual contractors eligible for medical malpractice coverage under the FTCA to the same extent as commissioned officers and employees of the PHS.  *See generally* Public Health Service Act, *id.* § 201, *et seq.*

To qualify for coverage under FSHCAA, a health center must apply to the Secretary of HHS, meet certain requirements, and obtain annual approval from the Secretary.  42 U.S.C. § 233(g)(1)(A), (g)(4), (h).  If the health center is approved, the Secretary "deems" the health center and its providers to be employees of the PHS for the upcoming calendar year, but only "[f]or purposes of" 42 U.S.C. § 233.  *Id.* § 233(g)(1)(A).  This yearly deeming action is binding upon HHS, the Attorney General, and any parties to a civil proceeding.  *Id.* § 233(g)(1)(F).

In turn, 42 U.S.C. § 233(a) provides that a claim against the United States under the FTCA is the exclusive remedy for certain lawsuits against PHS employees.  *See id.* § 233(a); H.R. Rep. 102-823, at 4 (1992).  Although the Secretary makes the annual "deeming" determination for health centers, the Attorney General decides whether

3

FTCA coverage extends to the "actions or omissions" in any specific lawsuit. *See* 42 U.S.C. § 233(b)–(c). The Attorney General has delegated this authority to the United States Attorneys. *See* 28 C.F.R. § 15.4(b). In short, HHS deems a health center and its employees in advance as covered for the upcoming calendar year and, if a civil action is filed, the Attorney General determines whether the specific alleged conduct falls within the scope of the deemed coverage and whether the United States is appropriately the exclusive defendant. *See Pediatric & Family Med. Found. v. HHS*, 2017 WL 8220596, at *5 (C.D. Cal. July 6, 2017) ("Only after the Attorney General certifies the act happened in the scope of employment is the suit removed to federal court and the United States substituted as the defendant in place of the health center defendant.").

If a health center or its providers are sued in state court, FSHCAA provides two ways for a state court action to be removed. First, the Attorney General may at "any time before trial" certify that a health center defendant is entitled to FTCA coverage, which results in removal of the action to federal court by the Attorney General, followed by the substitution of the United States. 42 U.S.C. § 233(c).

Second, § 233(*l*)(1) provides that "the Attorney General, within 15 days after being notified of such filing, shall make an appearance in such court and advise such court as to whether the Secretary has determined under subsections (g) and (h), that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." Only if the Attorney General or his designee "fails to appear in State court within the time period prescribed under paragraph (1)" may a health center defendant remove the case to federal court on its own, where proceedings are then stayed pending a determination and order on the appropriate forum for the plaintiff's claims for damages to proceed. *Id.* § 233(*l*)(2).

### III.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint in the Superior Court for the County of Los Angeles on July 26, 2023.  Notice of Removal Ex. A (ECF No. 1 at 22–26).  The Complaint does not identify any of the defendants as federal employees or agencies.  Instead, the individually named defendants are described as medical professionals "licensed by the State of California to practice their specialty in said state" and Eisner as a medical facility "licensed to provide hospital and medical facilities and services in the County of Los Angeles."  *Id.* at 23 (Compl. ¶¶ 3 & 4).  The Complaint alleges that Oh was in the Defendants' care and that they failed to timely recognize and treat issues arising from W.H.'s birth, resulting in permanent brain damage.  *Id.* at 24–25 (Compl. ¶¶ 9–13).

According to the Notice of Removal, Claassen, Morris, Jacobs, Lurvey, and Garcia are employees of Eisner, a federal grant recipient under FSHCAA.  Notice of Removal ¶¶ 1–2 (ECF No. 1 at 2).  The Notice of Removal states that Eisner's counsel forwarded a copy of the Complaint to HHS on August 3, 2023 and sent an overnight copy to the United States Attorney's Office that same day.  *Id.* ¶ 28 (ECF No. 1 at 10). [1]  Consistent with § 233(*l*)(1)'s requirement that the Attorney General enter an appearance within 15 days of notice of the state court action, the U.S. Attorney, acting as the Attorney General's designee, appeared on August 16, 2023 to advise the state court that whether the Eisner Defendants were deemed employees of the PHS "with respect to the actions or omissions that are the subject of the above captioned action" was under consideration.  *Id.* Ex. B (ECF No. 1 at 27–28).  Despite the United States indicating that the certification process under FSHCAA was ongoing, the Eisner Defendants removed this action to federal court on August 25, 2023.

---

[1] The Notice of Removal erroneously states that notice was provided to "the United States Attorney for the Northern District of California."  Notice of Removal ¶ 28 (ECF No. 1 at 10).  The United States acknowledges that the United States Attorney's Office for the Central District of California received notice on August 4, 2023.

5

## IV.  LEGAL STANDARD

Federal courts have long recognized that removal should be "strictly construed" and that a "defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014).  This premise stems from principles of federalism and "[d]ue regard for the rightful independence of state governments." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).  A defendant "may prefer federal court, but they may not remove their cases to federal court unless federal laws let them." *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 705–06 (3d. Cir. 2022).  Accordingly, "federal courts must apply a presumption against removal and construe uncertainties against removal to federal court.  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

This presumption against removal is softened for federal officer removal under 28 U.S.C. § 1442(a)(1), which requires a more "generous interpretation" in favor of removal.  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).  Despite this softer standard, federal officer removal remains constrained by the statutory perquisites and courts still "excercis[e] 'prudence and restraint'" in resolving doubts as to the removability of cases.  *See City & County. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1106 (9th Cir. 2022) (citation omitted).

## V.  ARGUMENT

### A.  Remand is required because the Eisner Defendants' removal under 42 U.S.C. § 233(*l*) is defective.

The Eisner Defendants' attempt to remove the action to federal court under § 233(*l*) fails because this subsection only allows for removal if the Attorney General *failed to appear* in the state court action within fifteen days after receiving notice of the filing of the state court action.  *See* 42 U.S.C. § 233(*l*)(1) & (2).  As described above,

6

§ 233(*l*)(1) directs the Attorney General to appear in state court within 15 days of notice of the action.  The related provision, § 233(*l*)(2), allows a defendant to remove the action to federal court only "[i]f the Attorney General fails to appear in State court within the time period prescribed under paragraph (1)."  In other words, the statute does not give defendants a unilateral removal right, but rather only permits them to remove when the Attorney General has failed to timely appear.

Here, the Notice of Removal states that Eisner's counsel notified HHS of the complaint on **August 3, 2023** and notified the United States Attorney's office the following day, via overnight carrier.  Notice of Removal ¶ 28 (ECF No. 1 at 10).  The U.S. Attorney, acting as the Attorney General's designee, then appeared in the state court action on **August 16, 2023**, within fifteen days of notice.  Notice of Removal Ex. B (ECF No. 1 at 27–29).  Accordingly, the Eisner Defendants' removal under § 233(*l*)(2) is facially defective.  *See, e.g.*, *Allen v. Christenberry*, 327 F.3d 1290 (11th Cir. 2003); *L.D.Q. I*, 2018 WL 1136568, at *1–3 ("Section 233(*l*)(2) does not provide a basis for removal because the Attorney General's designee did not 'fail to appear in State court.'"); *Babbitt*, 2018 WL 6040472, at *3 ("Under the plain text of Section 233(*l*)(2) removal was improper because the Attorney General did not "fail to appear" within "15 days after being notified" of the state court action."); *K.C.*, 2018 WL 5906057, at *3–*5 (recognizing that the FSHCAA only allows removal (1) when the Attorney General removes the case after certifying FTCA coverage under § 233(c), and (2) "when the Attorney General fails to appear within fifteen days under § 233(*l*)(2)").

The Eisner Defendants' Notice of Removal argues that the U.S. Attorney failed to timely appear within 15 days because the August 16, 2023 Notice stated that the Eisner Defendants' status as deemed employees was "under consideration" and the U.S. Attorney did not provide a final determination at that time.  Notice of Removal ¶¶ 29–31 (ECF No. 1 at 10–12); *see id.* Ex. B (ECF No. 1 at 27–29).  But this argument is a misrepresentation of the statute.

*First*, the plain text of § 233(*l*)'s removal provision only permits removal if the

Attorney General "fails to appear in State court within the time period prescribed under paragraph (1)." § 233(*l*)(2). The statute does not require that the Attorney General appear *and* provide a final determination as to the defendant's coverage during that fifteen-day period. Courts have repeatedly confirmed that the Attorney General's timely appearance is all that is required to foreclose removal under this section. *Sherman by & through Sherman v. Sinha*, 843 F. App'x 870, 873 (9th Cir. 2021) ("Sinha argues that the Attorney General did not 'appear' in state court because the Attorney General did not definitively advise the court of whether Sinha was considered a federal officer. However, she cites no authority in support of her position, and it is contrary to the statutory scheme and unworkable as a practical matter."); *accord Allen*, 327 F.3d at 1295 ("The Attorney General did appear through the United States Attorney . . . to give notice that no decision had been made but one was forthcoming. The next day after the Attorney General appeared the defendant doctors themselves removed the case to federal court, something the statute does not permit."); *Barnes v. Sea Mar Cmty. Health Ctrs.*, 2022 WL 1541927, at *3 (W.D. Wash. Apr. 27, 2022) ("The statute does not allow removal when the Attorney General properly appears and informs the court that the United States is still determining whether the defendant is an employee of the Public Health Services."), *R & R adopted*, 2022 WL 1540462 (W.D. Wash. May 16, 2022). The Notice of Removal ignores both the statutory text and the consistent weight of authority contrary to its position.

*Second*, to the extent the Notice of Removal is suggesting that it was appropriate to remove this case for the Court to make an initial certification determination, that argument is refuted by the statute. Notice of Removal ¶ 31 (ECF No. 1 at 12). By its own terms, § 233(*l*)(2) only authorizes removal to a federal forum if the Attorney General failed to appear within fifteen days. Thus, as the cases the Eisner Defendants rely on have recognized, a defendant can remove a case to federal court and seek an initial determination only if the United States has failed to appear within fifteen days of notice. *See, e.g.*, *Est. of Booker v. Greater Phila. Health Action, Inc.*, 10 F. Supp. 3d

656, 663 (E.D. Pa. 2014) (removal permitted "[i]f the Attorney General fails to act within the 15-day period"); *Est. of Campbell by Campbell v. S. Jersey Med. Ctr.*, 732 F. App'x 113, 116 (3d Cir. 2018) (removal permitted after "the Attorney General has failed to appear").  The Eisner Defendants do not point to any authority that permits removal when a clear statutory predicate for it is lacking.

For this reason, the Court should dismiss the Eisner Defendants' invitation to make any threshold certification determination.  *See* Notice of Removal ¶¶ 34–53 (ECF No. 1 at 13–20).  Here, the Attorney General has only recently been made aware of the litigation and the government's certification determination is ongoing.  This process is specific to each particular lawsuit and depends upon the cooperation of a defendant seeking coverage.  *See* Health Res. & Servs. Admin., HHS, *Federal Tort Claims Act: Health Center Policy Manual* 21–22, https://bphc.hrsa.gov/sites/default/files/bphc/ technical-assistance/ftcahc-policy-manual.pdf (last updated July 21, 2014) (listing documents the requesting entity must provide for a certification determination).  As the Ninth Circuit put it, "[i]f allowed, the premature removal of the case to the district court would bypass the Attorney General's initial determination of whether a defendant public health worker should be deemed a federal officer.  Providing the Attorney General with the opportunity to consider the issue is a prerequisite to federal jurisdiction." *Sherman*, 843 F. App'x at 873.

In short, the Eisner Defendants' removal under § 233(*l*)(2) is defective because the Attorney General made an appearance within the fifteen-day period.  Accordingly, the Court is without jurisdiction and this case should be remanded to California Superior Court.

### B.     Remand is required because the Eisner Defendants' alternative removal under 28 U.S.C. § 1442(a)(1) is defective.

The Eisner Defendants cannot remove this case to federal court under 28 U.S.C. § 1442(a)(1) and, accordingly, remand is required.  Section 1442(a)(1) allows any defendant who is an "officer (or any person acting under that officer) of the United

States or of any agency thereof" to remove an action to federal court.

As an initial matter, it is black-letter law that "a specific [statutory] provision controls one of more general application," and courts must "give effect, if possible, to every clause and word of a statute." *Gozlon-Peretz v. United States*, 498 U.S. 395, 396 (1991); *United States v. Menasche*, 348 U.S. 528, 538–39 (1955). As this District has recognized, if the "deemed" status of a health center allows for removal under § 1442(a)(1), then the specific removal provisions in § 233 would be superfluous. *K.C.*, 2018 WL 5906057, at *6 ("Application of § 1442, instead of § 233, in a case where a defendant is a deemed PHS employee would swallow the § 233 removal provision, rendering it superfluous."); *see also Nye v. Hilo Med. Ctr.*, No. 09-220, 2010 WL 931926, at *3 (D. Haw. Mar. 11, 2010) ("Given that § 233 specifically applied to this action, removal under the more general § 1442 was improper.").

More pointedly, allowing the Eisner Defendants to invoke § 1442 would effectively nullify the statutory scheme imposed by § 233. Under 42 U.S.C. § 233, the only two pathways to removal depend upon the action or inaction of the Attorney General. Either the Attorney General issues the prerequisite certification to authorize removal under § 233(c), or the Attorney General *fails to appear* in state court within the allotted time under § 233(*l*)(2). The FSHCAA's statutory removal provisions are "specific provision[s] applying to a very specific situation" and they control over the more general provision. *Cf. Morton v. Mancari*, 417 U.S. 535, 550 (1974); *see also O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061–62 (9th Cir. 2007) (inmate bringing Americans with Disabilities Act claim had to comply with the stringent exhaustion procedure of the Prison Litigation Reform Act). Allowing the Eisner Defendants to invoke § 1442 is particularly inappropriate where the only colorable federal defense they raise is § 233 immunity, Notice of Removal ¶ 14 (ECF No. 1 at 7), but they've refused to wait for the Attorney General to complete the statutory process to determine if that immunity applies. *Doe v. Centerville Clinics Inc.*, No. 2:23-CV-1107-NR, 2023 WL 5984337, at *3 (W.D. Pa. Sept. 14, 2023) ("To permit Centerville to raise

§ 233 as a defense for purposes of § 1442, when it didn't abide by the removal procedures of § 233, would sidestep the framework of § 233.").

Accordingly, the Eisner Defendants cannot use § 1442(a)(1) to end-run the specific removal provisions in § 233.

### 1. The Eisner Defendants are not federal officers under § 1442.

Should the Court reach this issue, the Eisner Defendants argument that they are federal officers under § 1442 by virtue of potentially being "deemed to be an employee of the Public Health Service" is unsupported. *See* Notice of Removal ¶ 10 (ECF No. 1 at 5). The Eisner Defendants are not even federal employees—let alone persons exercising significant authority on behalf of the federal government. *See County of San Mateo*, 32 F.4th at 756 ("When Congress first enacted § 1442(a)(1), the phrase 'officer of the United States' was generally understood as a term of art that referred to federal officers who 'exercis[ed] significant authority.'" (quoting *International Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 81 (1991))). Instead, Eisner is a federal grant recipient whose employees can be "deemed" to be PHS employees under FSHCAA. As the Supreme Court has recently explained, the word "deemed" is utilized in statutes for the limited purpose of establishing a "useful" "legal fiction." *Sturgeon v. Frost*, 139 S.Ct. 1066, 1081 (2019). That "legal fiction," which is created by § 233(g), is expressly limited by its own terms to be "[f]or purposes of this section," not for any other section of federal law. *See* § 233(g)(1)(A), (B), (D), (E), (F); *see also K.C.*, 2018 WL 5906057, at *5 ("A state court defendant cannot use its deemed federal status, which is limited to coverage under the FTCA for medical malpractice, for all purposes.").

### 2. The Eisner Defendants were not acting under the direction of a federal officer under § 1442.

The Eisner Defendants also err in claiming that they could remove this case as "person[s] acting under" an officer of the United States, 28 U.S.C. § 1442(a)(1). The "acting under" language "extend[s]" removal rights "to employees, as well as officers," of the federal government. *County of San Mateo*, 32 F.4th at 756. A "private person"

who is not herself a federal officer or employee can also qualify as someone "acting under" a federal officer if the individual "has certain types of close relationships with the federal government." *Id.* "The paradigm" of an "acting under" relationship "is a private person acting under the direction of a federal law enforcement officer." *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018).

The Ninth Circuit has "identified four factors" that bear on "whether a person was 'acting under' a federal officer": "(1) working under an officer in a manner akin to an agency relationship; (2) being subject to the officer's close direction, such as acting under the guidance, or control of the officer or having an unusually close relationship involving detailed regulation, monitoring, or supervision; (3) helping fulfill basic governmental tasks; and (4) conducting activities so closely related to the government's implementation of its federal duties that the person faces a significant risk of state-court prejudice." *City & County of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107 (9th Cir. 2022) (quotation marks and alterations omitted). Each of these factors cuts against the Eisner Defendants' claim to have been acting under any federal officer.

As to the first two factors, neither Eisner nor its employees have agency-like relationships with the government, nor do they act under federal government "subjection, guidance, or control," *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151, 153 (2007) (quotation marks omitted). Eisner may receive grant money from HHS, but it remains a private entity. *United States v. Orleans*, 425 U.S. 807, 816 & n.6 (1976) (noting that "plainly the granting of funds can be conditional without changing the basic relationship between federal and local governments and their components," and "[a]lthough such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of entrepreneurs or of state governmental bodies into federal governmental acts"); *Sherman*, 2019 WL 2242071, at *2 ("A [defendant's] status as an employee of a federal grant recipient is insufficient to establish federal officer or agency jurisdiction."). While Eisner must comply with laws and regulations to remain eligible for grant funding as well as to obtain malpractice coverage under FSHCAA, these requirements do not

1  entitle Eisner's employees to remove cases to federal court.  *See Watson*, 551 U.S. at 153
2  (holding that a private firm does not act under federal officers by complying with federal
3  laws, "even if the regulation is highly detailed and even if the private firm's activities are
4  highly supervised and monitored").

5      Indeed, the statutory provision the Eisner Defendants rely upon to state that they
6  are subject to federal control gives the lie to their own argument.  *See* Notice of Removal
7  ¶ 12 (citing to 42 U.S.C. § 254b to argue that Eisner, as a federally funded health center,
8  is acting under federal control).  Those regulations are grant conditions that apply to all
9  federally funded health centers, regardless of whether they have taken the additional,
10  optional, step of applying for deemed status under § 233(g).  Thus, the Eisner
11  Defendants' argument would render deeming and removal under § 233 superfluous—all
12  federally funded health centers would already be entitled to removal as persons "acting
13  under" a federal officer, regardless of whether they were actually "deemed" employees
14  of the PHS.  Accordingly, these grant conditions do not tip the first two factors in the
15  Eisner Defendants' favor.

16      As to the third factor, Eisner and its employees do not help fulfill basic
17  governmental tasks.  Privately operated health centers such as Eisner receive federal
18  grants to assist those centers with providing certain services to populations that are
19  "medically underserved."  42 U.S.C. § 254b(a)(1).  While those services further the
20  availability of an important benefit to the public, they are not services that, "in the
21  absence" of federal grant funding, "the Government itself would have had to" provide.
22  *Watson*, 551 U.S. at 154; *cf. N.G. v. Downey Reg'l Med. Ctr.*, 140 F. Supp. 3d 1036,
23  1040 (C.D. Cal. 2015) ("[T]he government is not outsourcing a government task to [the
24  medical center] and overseeing [the medical center's] conduct.  Instead, [the medical
25  center] merely collects Medicare, Medicaid, and/or Medi-Cal payments from the
26  government for providing medical treatment to eligible members of the public.").  The
27  Eisner Defendants have pointed to no authority establishing any general obligation for
28  the federal government to itself establish health centers that serve the medically

13

1  underserved community.

2          Instead, it is the government's grant funding that supports health centers' pre-

3  existing efforts to provide services that benefit the public.  *See* Elayne J. Heisler, Cong.

4  Rsch. Serv., R43937, Federal Health Centers: An Overview 2 (2017) (explaining that the

5  program "awards grants to *support* outpatient primary care facilities that provide care

6  primarily to low-income individuals" (emphasis added)); *id.* at 8 (explaining further that

7  these entities "are *eligible* to *apply* for Section 330 grants to operate health centers"; that

8  federal grants "are awarded competitively based on an assessment of the need for

9  services in a given area and the merit of the application submitted"; and that grant

10  recipients "are required to use grant funds to *supplement* and *not supplant* funding that

11  has been available *prior to* the grant" (emphasis added)).  Indeed, Eisner existed and

12  operated for over 80 years before it supplemented its funding with a health center grant

13  from the federal government.[2]  The Eisner Defendants cannot plausibly argue that they

14  were carrying out duties for the federal government long before Eisner ever applied for

15  its grant.

16          In other words, the government "assists" or "helps carry out" the work of health

17  centers—not the other way around.  That is why it is called the "Federally *Supported*

18  Health Centers *Assistance* Act."  Pub. L. No. 102-501, 106 Stat. 3268 (1992) (emphasis

19  added); *see also, e.g.*, *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 740 n.4 (8th Cir. 2021)

20  (rejecting a private company's argument for removal under 28 U.S.C. § 1442(a)(1)

21  where "the federal government provided *it* assistance, rather than the other way

22  around").  Thus, the Eisner Defendants were not acting under an officer of the United

23  States; the United States was giving grant money to Eisner in a specific context.

24          As to the fourth factor, the Eisner Defendants do not face "a significant risk of

25  state court prejudice." *County of San Mateo*, 32 F.4th at 757 (quoting *Watson*, 551 U.S.

26

27  _____

        [2] *Our History*, Eisner Health, https://www.eisnerhealth.org/about-us/our-history/
28  (last visited Sept. 25, 2023) (Eisner Health founded in 1920 under a different name;
    changed name to Eisner in 2002 after a grant from private donors; awarded first federal
    grant under FSCHAA in 2004).

at 152). Congress enacted the federal officer removal statute to address situations in which "state hostility" may have been "specifically directed against federal officers' efforts to carry out their federally mandated duties." *Mesa v. California*, 489 U.S. 121, 139 (1989). In cases filed against health center employees, unless the United States is substituted as a party, the case remains a medical malpractice tort suit under state law that is well within the competence of state courts. The concerns animating federal officer removal are not implicated.

The Eisner Defendants' reliance on *Agyin v. Razmzan*, 986 F.3d 168 (2d Cir. 2021) is misplaced. *See* Notice of Removal ¶¶ 11, 13 (ECF No. 1 at 5, 6). *Agyin* concluded that heath centers were carrying out duties the federal government is required to perform, analogous to federal contractors or employees, but did so without any real analysis of FSHCAA or how a federal grant that helps a private entity perform work might differ from a federal contract that outsources a core government function to a private entity. *See* 986 F.3d at 175–77. As described above, FSHCAA is best understood as—and indeed, is plainly intended to be—a grant program that assists health centers in carrying out their work. *Agyin* did not accurately consider this relationship.

In any event, *Agyin* is non-binding authority and what persuasive value it might possess is undermined by both its insufficient analysis of FSHCAA and the fact that it is contrary to the uniform law of this District, which has recognized that § 1442 is not applicable in these cases. *L.D.Q. II*, 2018 WL 6040474, at *2 ("[T]here is no statutory basis for Defendants' contention that they are federal officers. Defendants are not employees of a federal agency, and their sole relationship to the federal government is that of a grant recipient."); *K.C.*, 2018 WL 5906057, at *6 ("Here, Khalifa does not sufficiently demonstrate that he 'acted under' a federal agency or officer. On the contrary, the United States Attorney determined that Khalifa did not act within the scope of his deemed PHS employment. Therefore, the Court cannot find that Khalifa qualifies for § 1442 removal."); *Sherman*, 2019 WL 2242071, at *2 (holding same).

Because the Eisner Defendants are not federal officers, nor were they acting under

15

federal officers, this action should be remanded back to state court.

> **C.   The Eisner Defendants cannot invoke 28 U.S.C. § 2679(d) as a basis for removal.**

To the extent the Eisner Defendants invoke the Westfall Act as a basis for removal, it is improper.  The United States notes that, other than a single statutory citation in the first paragraph, the Eisner Defendants do not advance any reasoning supporting their invocation of 28 U.S.C. § 2679(d).  ECF No. 1 at 2.  The invocation is frivolous because the Westfall Act only allows for removal to federal court in two ways, both of which are executed by the Attorney General.  28 U.S.C. § 2679(d)(2), (3).  Thus, even if the Eisner Defendants were federal employees, the Westfall act would be an improper basis for them to remove this action.

Regardless, the Westfall Act is inapplicable to such "deemed" PHS employees. *See Thomas v. Phoebe Putney Health Sys., Inc.*, 972 F.3d 1195, 1203 (11th Cir. 2020) (acknowledging inapplicability of Westfall Act to "deemed" PHS employees); *O'Brien v. United States*, 56 F.4th 139, 146 (1st Cir. 2022) (noting that differences between Westfall Act and § 233 "are real, not simply technical"); *Hui v. Castaneda*, 559 U.S. 799, 809 (2010) (clarifying that § 233 incorporates only those provisions of the FTCA establishing the "remedy against the United States," not the Westfall Act itself).

As noted above, § 233(g) expressly limits the legal effect of being "deemed" a PHS employee to that section.  Deeming is not a blanket grant of federal employee status for all legal purposes.  Consequently, the Eisner Defendants are not eligible to invoke the Westfall Act as a basis for removing this action.

## VI.   CONCLUSION

For the foregoing reasons, this action should be remanded back to the Superior Court of California.

1   Dated: September 25, 2023          Respectfully submitted,

2                                      E. MARTIN ESTRADA
                                       United States Attorney
3                                      DAVID M. HARRIS
                                       Assistant United States Attorney
4                                      Chief, Civil Division
                                       JOANNE S. OSINOFF
5                                      Assistant United States Attorney
                                       Chief, Complex and Defensive Litigation Section
6

7                                         */s/Ryan C. Chapman*
8                                      RYAN C. CHAPMAN
                                       Assistant United States Attorney
9
                                       Attorneys for United States of America
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **L.R. 11-6.1 Certification**

2

3
     The undersigned counsel of record for the United States certifies that this brief contains 5,727 words, which complies with the word limit of L.R. 11-6.1.

4

5
  Dated: September 25, 2023              __/s/ *Ryan C. Chapman*_____
                                   RYAN C. CHAPMAN

6
                                   Assistant United States Attorney

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PROOF OF SERVICE BY MAILING**

I am over the age of 18 and not a party to the within action.  I am employed by the Office of United States Attorney, Central District of California.  My business address is 300 North Los Angeles Street, Suite 7516, Los Angeles, California 90012.

On **September 25, 2023**, I served **THE UNITED STATES OF AMERICA'S NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER GRANTING THE UNITED STATES OF AMERICA'S MOTION TO REMAND** on each person or entity named below by enclosing a copy in an envelope addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown below following our ordinary office practices.  I am readily familiar with the practice of this office for collection and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

Date of mailing:  **September 25, 2023**.  Place of mailing:  Los Angeles, California.

**Person(s) and/or Entity(ies) to Whom mailed**:

Vanessa N. Raven
Ikuta Hemesath LLP
1327 North Broadway
Santa Ana, CA 92706

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on:  **September 25, 2023** at Los Angeles, California.

_Carol M. Ybarra_
CAROL M. YBARRA

1